# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| MATTHEW LEE KLOPFENSTINE, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No. 2:13-cv-04214-NKL |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## ORDER

The Court denies Matthew Lee Klopfenstine's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1.[1]]

**I.     Background**

On July 28, 2011, a federal grand jury returned a superseding charging Klopfenstine with conspiracy to commit the sexual exploitation of children, in violation of 18 U.S.C. § 371 (Count One); production of visual depictions of a minor engaged in sexually explicit conduct, which depictions were produced using materials that had been transported in or affecting interstate and foreign commerce, in violation of 18 U.S.C. § 2251(a) (Count Two); and knowingly possessing visual depictions of a minor engaged in sexually explicit conduct that had been transported in interstate and foreign commerce, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Three). [Doc. 39, case no. 10-04039-01-CR-NKL.]

Trial began on December 7, 2011 and lasted two days. [Doc. 66, case no. 10-04039-01-CR-NKL.] On December 8, 2011, the jury found Klopfenstine guilty of Count Two, production of child pornography, and not guilty of the other two counts. [Doc. 72, case no. 10-04039-01-CR-NKL.]

---

[1] Unless otherwise noted, "Doc." refers to filings in case no. 2:13-cv-04214-NKL.

Klopfenstine's presentence investigation report was completed by the United States Probation Office, and reflected a total offense level of 36 with a criminal history category of I, resulting in an advisory Sentencing Guidelines range of 188 to 235 months' imprisonment. [Doc. 76, ¶ 77, case no. 10-04039-01-CR-NKL.] The Court adopted the PSR and its advisory Guidelines range and sentenced Klopfenstine to 188 months' imprisonment, entering judgment on June 19, 2012. [Docs. 79, 80, and 93, case no. 10-04039-01-CR-NKL.]

Klopfenstine timely filed a notice of appeal. [Doc. 82, case no. 10-04039-01-CR-NKL.] The sole issue on appeal was Klopfenstine's claim that the trial court should have dismissed a venire person, *sua sponte,* for cause. [*Id.*] The Eighth Circuit Court of Appeals affirmed Klopfenstine's conviction and sentence on March 4, 2013. [Doc. 101, case no. 10-04039-01-CR-NKL.][2] Klopfenstine's petition for rehearing was denied on April 11, 2013 and the mandate issued on April 26, 2013. [Docs. 102 and 103, case no. 10-04039-01-CR-NKL.]

Klopfenstine filed this 28 U.S.C. § 2255 motion on October 2, 2013. [Doc. 1.] He claims ineffective assistance of counsel and judicial bias, and that his presentence investigation report included unproven statements.

## II. Discussion

### A. Evidentiary Hearing Standard

An evidentiary hearing on a 28 U.S.C. § 2255 motion is necessary unless the motion, files, and records of the case conclusively show that the movant is not entitled to relief. *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008). A claim under § 2255 may be summarily dismissed without an evidentiary hearing if it is insufficient on its face or the record affirmatively refutes the factual allegations contained in the motion. *Id.* Accordingly, an evidentiary hearing is not required if the allegations in the motion "are contradicted by the

---

[2] Reported as *U.S. v. Klopfenstine*, 708 F.3d 1023 (8th Cir. 2013).

record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995).

The Court has reviewed the motion, files, and record, and concludes that all of Klopfenstine's claims can be fully and fairly evaluated without an evidentiary hearing.

### B. Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance, a movant must prove both: (1) that defense counsel's representation was deficient; and (2) that the deficient performance prejudiced the movant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *U.S. v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Failure to prove "either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

To establish deficient performance, the movant must show that "the lawyer's performance was outside the range of professionally competent assistance." *Cox v. Norris*, 133 F.3d 565, 573 (8th Cir. 1997). On this issue, "[j]udicial scrutiny of counsel's performance must be highly deferential" and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A movant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. To establish prejudice, the movant "must show that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *Cox*, 133 F.3d at 573.

Klopfenstine first complains that defense counsel failed to tell him he had the right to a bench trial. Under Fed. R. Crim. Pro. 23(a), waiver of a jury trial requires the government's consent. Here, the record contains no indication that the government did consent or would have consented to a waiver. Klopfenstine has demonstrated no prejudice.

Klopfenstine claims defense counsel failed to challenge or object to a biased jury. Such claim requires a showing of actual bias on the part of the jurors, *U.S. v. Tucker,* 243 F.3d 499, 509 (8th Cir. 2001), and Klopfenstine has made no such showing. Review of the transcript of voir dire also refutes such claim. Neither deficient performance nor prejudice is demonstrated.

Klopfenstine claims defense counsel should have objected to the size of the venire as too small. The record refutes the claim. Thirty-one venire persons appeared for jury service and 27 remained after strikes for cause. [Doc. 94, pp. 61-65.] Klopfenstine was permitted all ten of his peremptory strikes and the United States consented to take only four of its ten. [Doc. 94, pp. 63-64.] Neither deficient performance nor prejudice is demonstrated. As to specific jurors whom Klopfenstine identifies as biased, he has also failed to establish actual bias as to any of them, and that claim will be discussed in more detail later in this Order.

Klopfenstine complains that before he took the stand, defense counsel never told him the Court would impose a harsher sentence if the judge thought Klopfenstine was lying. The trial transcript reveals that the Court specifically told Klopfenstine, before he testified, that failure to testify truthfully could result in a harsher sentence, which he acknowledged understanding. [Doc. 99, p. 56.] He also complains his counsel did not show him all the evidence before he testified and did not tell him what to say and not to say. But he fails to identify how he would have changed his testimony based on this information and what he would not have said. In short, he has failed to establish prejudice.

Klopfenstine contends his counsel failed to adequately investigate and prepare witnesses, and to ask witnesses questions on the stand, apart from asking their names and whether they knew Klopfenstine. The record refutes Klopfenstine's statement that defense counsel's examination of witnesses was as limited as Klopfenstine claims. In any event, Klopfenstine fails

to explain what evidence additional investigation, preparation, and questioning would have produced or elicited. Even had he pointed to additional evidence, claims of ineffective assistance of counsel based on failure to secure witness testimony are disfavored, because presentation of evidence is a matter of trial strategy. *Walker v. Lockhart,* 807 F.2d 136, 139 (8th Cir. 1986) (and citations therein). *See also U.S. v. Staples,* 410 F.3d 484, 488 (8th Cir. 2005) (decisions relating to presentation of witnesses are "virtually unchallengeable decisions of trial strategy"). Neither deficient performance nor prejudice is demonstrated.

Klopfenstine claims his defense counsel smelled of alcohol during the trial. Generally, a defense counsel's personal issues do not, alone, establish a presumption of prejudice. *Johnson v. Norris,* 207 F.3d 515, 517-18 (8th Cir. 2000) (declining to establish presumption of prejudice based on defense counsel's mental illness, bipolar disorder, and applying *Strickland* standard to claim of ineffective assistance). Specific acts or omissions must be examined to ascertain whether prejudice occurred. *Id. See also Ivory v. Jackson,* 509 F.3d 284, 295-96 (5th Cir. 1007) (same; allegation that defense counsel was abusing drugs and alcohol during trial). Even if Klopfenstine's claim is true, he does not point to specific acts or omissions, nor explain how the outcome of the trial was affected. Prejudice is not demonstrated.

Klopfenstine claims defense counsel did not know what he was doing, and that defense counsel said in court that he mostly did state cases and did not know much about federal rules. Deficient performance is not established by showing that counsel did not know "what he was doing," but by showing that counsel's performance fell below an objective standard of reasonableness as to a specific issue. *See Strickland,* 466 U.S. at 690-91; *Wright v. Nix,* 928 F.3d 270, 271 (8th Cir. 1991). Klopfenstine's defense counsel made an opening and closing argument, offered evidence, examined witnesses, participated in the instruction conference, and otherwise

vigorously represented his client. While defense counsel said he was used to state court, he never said he did not know the federal rules. [*See, e.g.*, Doc. 98, p. 82.] His performance did not fall below an objective standard of reasonableness. In any event, there was strong evidence against Klopfenstine. Klopfenstine points to nothing defense counsel could have done differently to affect the outcome of the case. Indeed, defense counsel was partially successful in that Klopfenstine was not convicted on all counts. Neither deficient performance nor prejudice is demonstrated.

Klopfenstine complains defense counsel did not tell him "you <u>never</u> win in Federal court on" child pornography charges. [Doc. 1, p. 12, emphasis in original.] But Klopfenstine has failed to show the truth of that statement and how he was prejudiced by not hearing it. He also argues that he would rather have served five years under a plea bargain, instead of the 15-year, 8-month sentence he received. [Doc. 1, p. 13.] But Klopfenstine points to no evidence that the government offered a plea deal at all. Neither deficient performance nor prejudice is demonstrated.

Klopfenstine complains defense counsel failed to object when the prosecutor was "badgering" him on the stand. [Doc. 1, p. 13.] Klopfenstine does not identify any portions of the cross-examination he claims were objectionable. Review of the transcript discloses that the questions asked Klopfenstine on cross-examination, if vigorous, were relevant and permissible. Defense counsel cannot be ineffective in failing to make meritless objections. *See Garrett v. U.S.*, 78 F.3d 1296, 1305 (8th Cir. 1996).

Klopfenstine also points to things defense counsel allegedly told Klopfenstine's parents: not to worry because he (defense counsel) would work something out with the prosecutor, and that he knew the judge and she would bar him from court if he did not watch himself.

Predicting outcomes is something attorneys do in the course of rendering their professional services, and all attorneys must behave appropriately before the courts. The statements, if made, do not demonstrate deficient performance, nor do they show prejudice to Klopfenstine's defense.

Klopfenstine complains defense counsel kept calling Klopfenstine's father "Gil" on the stand, even after being told to call him "Gilbert." [Doc. 1, 13.] The record reflects Klopfenstine's father identified himself as "Gil." [Doc. 99, p. 58.] In any event, Klopfenstine does not explain how the alleged behavior demonstrates deficient performance or prejudiced his defense.

Klopfenstine complains about defense counsel's decision not to bring up the fact that Klopfenstine passed a voice analyzer test. The decision was grounded in the law. Such tests, designed to determine whether an individual has been truthful, are universally deemed unreliable and therefore inadmissible. *E.g., U.S. v. Gordon,* 688 F.2d 42, 44-45 (8th Cir. 1982). Failing to raise a meritless issue does not constitute deficient performance. *Garrett*, 78 F.3d at 1305.

In a similar vein, Klopfenstine complains about defense counsel's failure to put on evidence or argue that Klopfenstine was taking drugs on the evening he committed the offense, or was drunk at the time; or to request a jury instruction about voluntary intoxication. [Doc. 1, p. 13; Doc 12, pp. 24-25.] Voluntary intoxication, whether caused by drugs or alcohol, is not a defense to a general-intent crime. *See* Eighth Cir. Model Crim. Jury Inst. 9.06 (2011), and *U.S. v. Lavallie,* 666 F.2d 1216, 1219 (8th Cir. 1981). The crime of production of child pornography, 18 U.S.C. § 2251(a) and (e), of which Klopfenstine was convicted is a general intent crime. *See Simpson v. U.S.,* 2013 WL 1490462 *10 (E.D. Mo. 2013) (receipt and possession of child pornography under 18 U.S.C. § 2242A is general intent crime); *U.S. v. Sheldon,* 2014 WL 1378122 *1-3 (9th Cir. 2014) (describing interstate element of 18 U.S.C. § 2251(a) as not

7

requiring specific knowledge).

Further, to establish a claim of ineffective assistance of counsel, a movant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689. Klopfenstine testified at trial that he was outside of the hotel room or leaving the room when pornographic photographs of the minor were taken. [Doc. 99, pp. 246-47, 276-77.] Adducing drug use or memory impairment would not have supported Klopfenstine's testimony that he was absent at critical times. Under the circumstances, defense counsel can safely be presumed to have been exercising sound trial strategy, and Klopfenstine has not rebutted the presumption. Klopfenstine demonstrates neither deficient performance nor prejudice in defense counsel's failure to make use of evidence of voluntary intoxication.

Klopfenstine next argues defense counsel should have presented records from prior court appearances of Mike Martin, who allegedly previously stated Klopfenstine was innocent. Klopfenstine also complains defense counsel should have subpoenaed Martin to testify. Klopfenstine does not produce or in any way identify the records, nor explain how they would have been admissible in light of hearsay rules. Defense counsel also explained by affidavit that he interviewed Martin and concluded Martin was an undesirable witness. [Doc. 8-1.] A decision whether to call a witness "is a virtually unchallengeable decision of trial strategy." *Staples,* 410 F.3d at 488. Klopfenstine demonstrates neither deficient performance nor prejudice.

Three of Klopfenstine's arguments concern the camera with which the pornographic photographs of the minor were taken. He complains that defense counsel should have argued the camera was set to take pictures automatically, and should have pointed out that the camera did not have Klopfenstine's fingerprints on it. He also complains that in his direct appeal, his

appellate counsel was ineffective because she "put down on Appeal that I said, I had taken some of the pictures. I didn't say that on the stand. I said, I don't remember even picking up the camera but I must have. Meaning they were wrestling around in their underware [sic]." [Doc. 1, p. 14.]

Klopfenstine admitted at trial that he saw José Garcia with a camera; that he was present when at least some photographs of the minor were taken, including photographs of the minor wrestling clad in underwear; that he (Klopfenstine) must have taken some photos, but claimed that due to his intoxication did not recall taking any photos. [Doc. 99, pp. 243, 245, 250, 251, 258, and 260.] Klopfenstine also testified as follows:

> Q: Okay. You've seen the pictures, the ones taken at 10:24 and into 10:25, a fair number of which have all three of those other people in them, have you not?
>
> A: Yes, I have.
>
> Q: Based on that, are you denying that you picked up the camera at that point and took those pictures?
>
> A: Oh, no, I'm not denying it.
>
> Q: Okay. Do you think you probably did take those pictures?
>
> A: I think I could have, yes.

[Doc. 99, pp. 245-46.] He testified that when the photos of the minor's genitals were taken, he was outside smoking. [Doc. 99, pp. 270-71, 284-85.] There was no evidence that the camera was set to take photos automatically or was mounted so as to have enabled photographs to have been taken without being handheld.

Under the circumstances, particularly given Klopfenstine's admissions, it made strategic sense for defense counsel not to argue about whether the camera could have automatically taken

9

photos, or bore Klopfenstine's fingerprints. The exercise of such trial strategy does not demonstrate ineffective assistance of defense counsel.

As for appellate counsel, Klopfenstine's description of what she argued varies in no material way from Klopfenstine's testimony. In any event, the issue raised on direct appeal was whether a juror should have been dismissed, *sua sponte,* for cause. Klopfenstine's appellate counsel was not ineffective in the way she described his testimony, nor can he demonstrate prejudice.

Klopfenstine argues defense counsel was ineffective because he failed to tell the judge that two jurors were talking about the case during a break. [Doc. 1, p. 14; Doc. 12, pp. 4-5.] The US attorney submitted an affidavit from defense counsel, Daniel Dodson, with the suggestions in opposition. [Doc. 8-1.] Dodson states:

> During trial, I do not recall ever [being] advised by anyone that trial jurors had been observed discussing the case during breaks. Had I been made aware of any claim of juror misconduct, I most certainly would have brought such alleged conduct to the immediate attention of the district court judge.

Klopfenstine then submitted affidavits with his reply suggestions. [Doc. 12-1.] His niece, Christine Evans, stated in her affidavit:

> I, Christine Evans, heard two women from the jury talking in the bathroom about Matthew Klopfenstine. They said, "I can't believe they actually think he is not guilty of what he did." As I was leaving the stall to go and wash my hands, I saw the two women leave the bathroom. As they were leaving, one of the women said. "We need to hurry up and get back in there." After I overheard what they said, I left the bathroom and went and told my Aunt Linda, Matthew Klopfenstine's mother. At that point it was brought up to Dan[,] Matthew's lawyer. Matt's lawyer (Dan) brushed the comment off and said he needed to get back into the court room. After the trial was over, I left the courthouse building and one of the women from the jury said, to the other women "I can't believe that fat bitch is crying like that, did she really think they were going let him go?" The other women said, "yeah right."

10

[Doc. 12-1, p. 1.]

>  Klopfenstine's aunt, Linda Evans, stated:
>
>> [W]hen I told [Daniel Dodson] that my niece overheard the two lady jurors talking about the case when she was in the restroom, and the lawyer said, "Oh their allowed to whisper on Jury. What time is it? I have to get back in to court". We don't know the law but thought he did and would bring it up to the Judge. ….

[Doc. 12-1, p. 4.]

>  Klopfenstine's uncle, Robert Evans, stated:
>
>> I was standing next to my sister when she tried to ask the lawyer if it wasn't wrong for the jurors to be talking during the trial and she tried to tell him about the time my daughter overheard the two ladies from the jury talking about the trial when she was in the restroom, but he just ignored her. At one time he even said, that he had to be careful in what he said to the Judge or she would throw him out.
>>
>> ***
>>
>> When my daughter and I were leaving the courthouse I overheard two of the lady jurors saying, "I don't know why that fat bitch is crying, did they think that we were going to let him off."

[Doc. 12-1, p. 2.]

Apart from their gender, the jurors who allegedly made the statements are not identified, and there is no indication of when during the proceedings the jurors made the alleged statements. Dodson states in his affidavit that no one told him during trial that jurors were discussing the case during breaks. Even the affidavits Klopfenstine submitted contain no evidence that Dodson was told the substance of what the two jurors allegedly said in the bathroom. Defense counsel cannot be ineffective for failing to act on information not brought to his attention. *See Kinnamon v. Scott*, 40 F.3d 731, 734 (5th Cir. 1994) (eleventh-hour affidavits claiming that two jurors were discussing case in bathroom during trial were not persuasive, and no evidence was

11

produced of what trial counsel was told about alleged conversation; neither ineffective assistance of counsel nor prejudice demonstrated).

Furthermore, the jurors were instructed during the trial not to discuss the case. The Court also instructed the jury how to conduct deliberations and what could be considered. Jurors are presumed to follow the instructions given. *U.S. v. Smith,* 508 F.3d 861, 866 (8th Cir. 2007); *Yannacopoulus v. Gen. Dynamics Corp.,* 75 F.3d 1298 (8th Cir. 1996). And even if such statements were made, there is no evidence that the jurors' statements were not based on the evidence against Klopfenstine, which was strong. Klopfenstine shows no actual juror bias, *see Tucker,* 243 F.3d at 509, nor that the outcome of the trial was prejudiced as a result of those statements.

Klopfenstine argues that defense counsel told him after trial that he (Klopfenstine) would be better off appealing than asking for a new trial, and failed to tell him he could ask for a new trial based on ineffective assistance of counsel. Klopfenstine cannot show prejudice. Whether a claim of ineffective assistance is pursued in the context of a motion for new trial, or a proceeding under § 2255, the *Strickland* standard applies. *See U.S. v. Hubbard,* 638 F.3d 866, 870 (8th Cir. 2011) (applying *Strickland* to denial new trial claim based on ineffective assistance). Klopfenstine is raising the same challenge in the instant proceeding that he could have raised in a motion for new trial.

Finally, Klopfenstine complains defense counsel failed to investigate the presentence investigation report, and that the report was biased. Klopfenstine does not explain what evidence further investigation would have revealed. Furthermore, at sentencing and in front of Klopfenstine, defense counsel told the Court he was not challenging the facts contained in the report. [Doc. 93, pp. 3-4.] The Court also asked Klopfenstine whether he wished to say

anything before he was sentenced, and Klopfenstine said no. [Doc. 93, p. 11.] Klopfenstine also fails to explain how additional investigation would have changed the sentence he received. He demonstrates no prejudice.

Klopfenstine's claim of ineffective assistance of counsel fails.

**C.    Judicial bias**

The second topic of Klopfenstine's motion concerns judicial bias. The Eighth Circuit has held that this type of claim should be made on direct appeal, not in a § 2255 motion, absent a showing of cause and prejudice. *Denoyer v. U.S.,* 33 F.3d 57 *1 (8th Cir. 1994) (Table). *See also Thompson v. U.S.,* 2013 WL 681909 *3 (D.S.D. 2013) (citing *Denoyer*). As discussed below, Klopfenstine fails to show cause and prejudice.

The United States Supreme Court has explained that the bar for a successful challenge based on judicial basis is very high:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp., 384 U.S.*, [384 U.S. 563, 583 (1966)]. In and of themselves (*i.e*., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required…when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may do* so if they reveal an opinion that derives from an extrajudicial source; and they *will do* so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

***

> Not establishing bias or partiality…are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky v. U.S.*, 510 U.S. 540, 555 (1994).

The Eighth Circuit Court of Appeals requires that to disqualify a presiding judge, a litigant must show personal bias or prejudice that stemmed from an extrajudicial source and resulted in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *U.S. v. Hollis*, 718 F.2d 277, 280 (8th Cir.1983).

Klopfenstine complains that "the judge found everything favorable to the Prosecutor." [Doc. 1, p. 15.] He points to no particular rulings, nor even to any objections made and overruled. The record also refutes his claim. For example, the United States received only four of the usual ten peremptory strikes during jury selection. The Court made rulings against the United States during the trial. And the Court on its own stopped the prosecutor during closing argument when he made a reference to the defense's failure to call a witness who was equally available, and then instructed the jury about equally available witnesses.

A number of Klopfenstine's complaints concern the jury. Klopfenstine claims bias is demonstrated by the Court permitting venire persons onto the jury after they said they could not be fair; permitting Juror Weller to serve when "he said at 1st he couldn't be fair [and] impartial"; and permitting Juror Brooke to serve even though, as a resident of Boonville like Klopfenstine, she denied hearing or reading about Klopfenstine's charges when "the story was all over the papers including the free one everyone gets each week." [Doc. 1, p. 16.]

District courts have substantial discretion in conducting voir dire. *U.S. v. Blom*, 242 F.3d

799, 805–06 (8th Cir. 2001). The mere exercise of such discretion cannot demonstrate bias in general, and does not demonstrate it here. The record refutes Klopfenstine's claim that venire persons, including Weller, were allowed to remain even after saying they could not be fair. No objection was made to Brooke's service on the basis that she was untruthful about not having heard of Klopfenstine's charges, and the record contains no evidence that she was in fact untruthful. Further, Weller was the alternate juror and did not ultimately deliberate—he was released before deliberations began.

Klopfenstine also claim judicial bias because the Court did not do anything about jury members who were allegedly whispering during the trial, and because the Court told the jury she knew they wanted to go Christmas shopping and hoped they could reach a decision. The record does not show that the Court was even made aware of the jurors' alleged conduct, and does not show any statements by the judge about going Christmas shopping or hoping they would reach a decision.

Klopfenstine complains that the Court obviously did not like defense counsel, picked on him, and told someone she did not like him. The record does not support the claims. Even so, such complaints amount to no more than the type of criticism or disapproval that does not on its own support a bias challenge. *See Liteky,* 510 U.S. at 555.

Klopfenstine claims that "on every single break the Prosecutor and FBI went up to the Judge visiting with her, without [defense counsel] being there." [Doc. 1, p. 15.] The record does not reflect that such visits occurred. Even if such visits took place, Klopfenstine does not demonstrate what they were about. Conclusory allegations or surmise about the nature of the visits fall short of demonstrating the Court became an advocate for the prosecution. *See Davis v. Wyrick,* 766 F.2d 1197, 1204 (8th Cir. 1985).

Klopfenstine complains that when the jury asked a question about what constituted lewd photos, and whether photos of a clothed minor would qualify, the Court too readily agreed with the prosecution's interpretation. [Doc. 1, p. 15.] The record reflects that the Court discussed the jury's question with the prosecutor and defense counsel. While defense counsel suggested the jury be referred only to Instruction 19, a one-sentence instruction that defined "sexually explicit conduct" as "actual or simulated lascivious exhibition of the genitals or pubic area of any person" [Doc. 71, p. 25], the Court decided to refer the jury to both Instructions 19 and 22, as suggested by the prosecutor. Instruction 22 explained that whether visual depiction of the genitals or pubic area constitutes lascivious exhibition requires consideration of the overall content of the material, including factors such as whether the minor is fully or partially clothed, or nude, and whether the focal point of the picture is on the minor's genitals or pubic area. [Doc. 71, p. 28.] Klopfenstine does not explain how the Court's decision demonstrates bias, nor could he. The definition reflected the law, *see U.S. v. Wallenfang,* 568 F.3d 649, 657 (8th Cir. 2009), and directing the jury to both instructions, which had already been given, answered the jury's question.

Klopfenstine also claims the Court displayed bias by agreeing with the prosecutor that sexual exploitation of a minor is a violent crime. The prosecutor pointed out after the jury verdict, in the context of determining whether mandatory custody was required, that 18 U.S.C. § 3156(a)(4)(C) defines a crime of violence as including any felony under Chapter 110. [Doc. 99, p. 193.] Sexual exploitation and other abuses of children are covered offenses under Chapter 110. *See U.S. v. Bach,* 400 F.3d 622, 633 (8th Cir. 2005). Following the law does not demonstrate judicial bias.

Finally, Klopfenstine complains that the Court displayed bias by failing to appoint

counsel to assist him with his §2255 motion. An individual in custody on a federal sentence has no constitutional right to appointment of counsel to assist in preparation and presentation of a §2255 motion. *See Smith v. U.S.,* 2013 WL 632990 *5 (N.D. Iowa, Feb. 9, 2013) (citing *Day v. U.S.,* 428 F.2d 1193, 1195 (8th Cir. 1970)). Klopfenstine has shown no particularly complex factual or legal issues requiring presentation by counsel. He has demonstrated no bias by the Court in failing to appoint counsel herein.

The claim of judicial bias fails.

**D.     Statements in the PSR**

The final section of Klopfenstine's motion is captioned, "Unprov[en] Statements on PSR." His claim is difficult to follow. Klopfenstine states he had no prior record and that the prosecutor and probation officer "were out to get me." [Doc. 1, p. 17.] He complains that the PSR presented only information from a teacher who did not like Klopfenstine, and omitted favorable information from a "Principle [sic] that sent a card to my parents stating what good I was doing at the school with all of the pupils." [*Id.*]

Klopfenstine further complains, "[T]his one they talked with about a picture, had to have made a deal with the FBI, because he was always in trouble with drugs and getting arrested. I wouldn't help him out to get drugs & he was mad at me and lied to get a lesser sentence for himself." (D.E. 104:17.) Finally, he asserts, "That picture in question was in my parents' home. They were home and my girlfriend took the picture. We had a lot of people spending that night and some slept on the floor and taking turns on the bed. Nothing happened!" (D.E. 104:17.)

Allegations related to unproven statements in a PSR are, at worst, trial errors and can be raised on direct appeal. *U.S. v. Davis*, 583 F.3d 1081, 1095-96 (8th Cir. 2009). A "collateral challenge may not do service for an appeal," *U.S. v. Frady,* 456 U.S. 152, 165 (1982), and

17

Klopfenstine therefore may be procedurally barred from raising such a claim in his § 2255 motion, *see U.S. v. Simmerman*, 987 F.2d 770 (5th Cir. 1991) (failure to first present arguments in a direct appeal resulted in procedural bar in § 2255 proceeding) (unpublished).

But even if unproven statements in a PSR are proper topics of a § 2255 motion, Klopfenstine's allegations are vague and conclusory at best. Vague and conclusory allegations are not sufficient to state grounds for relief in a habeas proceeding. *U.S. v. Aceves-Martinez*, 2013 WL 4951344 at *7 (W.D. Ark. Sep. 13, 2013) (citing *Hollis v. U.S.,* 796 F.2d 1043, 1046 (8th Cir. 1986). *See also Blackledge v. Allison,* 431 U.S. 63, 74 (1977) ("The … presentation of conclusory allegations unsupported by specifics is subject to summary dismissal."); *Voytik v. U.S.*, 778 F.2d 1306, 1308 (8th Cir. 1985) (same).

Further, and as discussed above, the facts in the PSR were never objected to. Defense counsel stated he had no objection to the facts, and when asked whether he had anything to say immediately prior to sentencing, Klopfenstine said no. In the absence of an objection to the facts contained in the PSR, the Court could accept them as true. *See Davis,* 583 F.3d at 1095. And Klopfenstine has offered no evidence to demonstrate that any of the facts in the PSR were not true, or that the Court relied on any such information to impose sentence. Moreover, defense counsel made letters of support, an award certificate, and positive newspaper articles about Klopfenstine part of the record, and they were before the Court at the time of sentencing. [Doc. 78; Doc. 93, p. 10.]

Klopfenstine states no basis for relief based on statements contained in the PSR.

### III. Certificate of Appealability

The Court will issue a certificate of appealability only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the

reasons discussed above, Klopfenstine has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability in this case.

**IV.     Conclusion**

Matthew Lee Klopfenstine's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 1] is denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: August 14, 2014
Jefferson City, Missouri